United States District Court
Northern District of California

R.R., by and through his parent ROSLYN R.,

Plaintiffs,

v.

OAKLAND UNIFIED SCHOOL DISTRICT; and GARY YEE, Individually and in his capacity as Superintendent of the Oakland Unified School District,

Defendants.

Case No.: CV 13-05069-KAW

ORDER REGARDING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION TO ENFORCE "STAY-PUT"

(Dkt. No. 26)

On December 12, 2013, Plaintiffs R.R. and Parent Roslyn R. filed a motion for preliminary injunction to enforce the "stay-put" provision to allow Student R.R. to stay in his current educational placement and have his last agreed upon Individualized Education Plan (IEP) fully implemented. (Dkt. No. 26.) Oakland Unified School District opposes this motion on the grounds that the relief sought is not the current educational placement pursuant to the Individuals with Disabilities Education Act (IDEA). (Defs.' Opp'n, Dkt. No. 27 at 1.) Thereafter, the Court ordered the parties to meet and confer regarding R.R.'s placement and submit a joint status update. (Dkt. No. 34.) On January 27, 2014, the parties filed separate status updates informing the Court that they were unable to agree upon a current stay put placement. (Dkt. Nos. 38 & 39.)

Upon review of the moving papers and status updates, the Court finds this matter suitable for resolution without further briefing and without oral argument pursuant to Civil Local Rule 7-1(b), and GRANTS IN PART AND DENIES IN PART Plaintiffs' motion as set forth below.

## I. BACKGROUND

Plaintiff R.R. ("Student") is a 15 year old boy with severe autistic-like behaviors, low cognitive ability, is non-verbal, has a long-standing seizure disorder, and exhibits aggressive and

self-injurious behavior. (Compl. ¶ 7.) He was found eligible for special education services in May 2001. *Id.*

In May and September 2011, an Individualized Education Plan ("IEP") was implemented, which included 23 hours of home-based instruction provided by a Non-Public Agency to provide Applied Behavior Analysis services and training to R.R. in the home environment. (Compl. ¶ 9; Pls.' Mot. at 9; Defs.' Opp'n at 3.)

In June 2013, the IEP team convened, at which time the District proposed an IEP and changes in the program, placement, services, and goals, to which Parent did not consent. (Compl. ¶ 9.) Thereafter, the District filed a due process request before the Office of Administrative Hearings ("OAH") seeking the authority to implement the IEP without Parent's consent. (Compl. ¶10.) A hearing was held, and the Hearing Officer's decision authorized the District could implement the proposed IEP, as amended, over Parent's objections. (Compl. ¶ 14.)

In August 2013, in response to an Alameda County Family Court Order,[1] Parent Roslyn R. ("Parent") unilaterally increased R.R. days in the special day class to three days per week, from the previously agreed-upon two days per week. (Def.'s Opp'n at 5.)

On October 30, 2013, Plaintiffs filed a complaint in federal court contesting the OAH Decision and alleging additional violations of Section 504 and the ADA. On December 12, 2013, Plaintiffs filed a motion for preliminary injunction to enforce stay put. On January 27, 2014, the parties filed supplemental statements regarding their respective positions.

## II.   LEGAL STANDARD

While parties dispute the appropriate placement of a student, "unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed." 20 U.S.C. § 1415(j); see also 34 C.F.R. § 300.518(b).

---

[1] In 2012, Student's father filed an action in Alameda County Family Court for amended child support and visitation. On April 16, 2013, the presiding judge in that matter required Student to attend school three days per week. (Decl. of Roslyn R., Dkt. No. 26-2 ¶ 9.)

2

California has adopted the federal stay put provision. Cal. Educ. Code § 56505(d). The purpose of the stay put provision is to preserve the status quo. *Ms. S. ex rel. G. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1133 (9th Cir. 2003). While the IDEA does not define the phrase "current educational placement," it is generally interpreted as the placement set forth in the child's last implemented IEP. *Johnson ex rel. Johnson v. Special Educ. Hearing Office, State of Cal.*, 287 F.3d 1176, 1180 (9th Cir. 2002). If a stay put order is entered, the school district is obligated to pay the cost of the student's current educational placement pending the resolution of the judicial proceedings. *Joshua A. v. Rocklin Unified School Dist.,* 559 F.3d 1036, 1040 (9th Cir. 2009).

Alternatively, the state and the parents may "otherwise agree" to another placement, which then becomes subject to the stay put provision. *Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearing*, 903 F.2d 635, 641 (9th Cir. 1990); 34 C.F.R. § 300.518(a). The parties implicitly agree to a placement when the parents receive a state administrative agency decision in favor of their choice of placement. *Clovis Unifed,* 903 F.2d at 641 (citing *Sch. Comm. of Burlington v. Mass. Dep't of Educ.*, 471 U.S. 359, 372-73 (1985)); 34 C.F.R. § 300.518(d).

A motion for stay put "may be filed during the pendency of any judicial proceeding, including an appeal from an ALJ's decision following a due process hearing." *Ravenswood City Sch. Dist. v. J.S.*, C 10-03950 SBA, 2010 WL 4807061 (N.D. Cal. Nov. 18, 2010)(citing *Joshua A., 559* F.3d at 1038-39). A motion to stay put functions as an "automatic" preliminary injunction, so the moving party need not show the traditionally required factors (e.g., irreparable harm) to obtain preliminary relief. *Joshua A*, 559 F.3d at 1037 (citing *Drinker ex rel. Drinker v. Colonial Sch. Dist.,* 78 F.3d 859, 864 (3d Cir. 1996)).[2]

### III.   DISCUSSION

The parties agree on the majority of services contained in Student's last implemented IEP. Therefore, the Court will briefly list the agreed upon services, and will then address in more detail those services which are in dispute.

---

[2] In light of this authority, the Court disregards Defendant's argument about the traditional preliminary injunction factors and does not hold Plaintiffs to that high standard. (Def.'s Opp'n, Dkt. No. 27 at 8-9.)

**A. Agreed upon Services**

The parties do not dispute the following services contained in the last implemented IEP:

1. Skill trainers on the days of R.R.'s attendance at school. (Pls.' Stay Put Statement, "Pls.' Stmt.," Dkt. No. 39 at 4; Def.'s Stay Put Statement, "Def.'s Stmt.," Dkt. No. 38 at 5.)

2. 20 minutes of individual occupational therapy once per week. (Pls.' Stmt. at 5; Def.'s Stmt. at 3.)

3. 30 minutes once per week of individual Speech and Language (pull-out) services at school. (Pls.' Stmt. at 5; Def.'s Stmt. at 4.)

4. 60 minutes once per month of Speech and Language consults in the community. (Pls.' Stmt. at 5; Def.'s Stmt. at 4.)

5. Health and Nursing Specialized Physical Care (seizure plan monitoring) 15 minutes once per month. (Pls.' Stmt. at 5; Def.'s Stmt. at 4.)

6. 45 minutes per month of Assistive Technology. (Pls.' Stmt. at 5; Def.'s Stmt. at 4.)

7. 360 minutes per year of Occupational Therapy ("OT") class consults. (Pls.' Stmt. at 5; Def.'s Stmt. at 4.)

8. Four hours per week of behavior consult (in class, the home, or community). (Pls.' Stmt. at 5; Def.'s Stmt. at 4.)

9. Extended School Year Services, which include: 4 hours of home instruction 3 days per week and then 4 hours five days per week, with 30 minutes Individual Speech and Language consult and 20 minutes Individual OT weekly. (Pls.' Stmt. at 5; Def.'s Stmt. at 4.)

Accordingly, these services are part of Student's current educational placement for the purposes of stay put and must be delivered by the District during the pendency of this action.

**B. Services in Dispute**

The parties, however, disagree as to the services listed below.

1. <u>Number of Days in Special Day Class (SDC)</u>

The parties dispute how many days Student should be on the middle school campus for the purposes of stay put. The District argues that it is the two days per week required by the 2011 IEP. Plaintiffs contend that the IEP was amended by mutual consent of the local educational

4

1 agency when the District allowed R.R. to attend the SDC class in August 2013 three days per
2 week and changed R.R.'s schedule to two days of home-based instruction.  (Pl.'s Reply to Def.'s
3 Opp'n to "Stay-Put" Mot., "Pl.'s Reply", at 10.)

4 Typically, the current educational placement is the placement described in the child's most
5 recently implemented IEP." *See Johnson ex. rel. Johnson v. Special Educ. Hearing Office, State
6 of Cal.*, 287 F.3d 1176, 1180 (9th Cir. 2002); *K.D. ex rel. C.L. v. Dep't of Educ., Hawaii*, 665 F.3d
7 1110, 1118 (9th Cir. 2011).  The policy behind stay-put is to maintain the status quo until all
8 disputes over the student's appropriate educational placement are resolved. *Van Scoy ex rel. Van
9 Scoy v. San Luis Coastal Unified Sch. Dist.*, 353 F. Supp. 2d 1083, 1086 (C.D. Cal. 2005).  In the
10 instant matter, the services that were being delivered to Student were not necessarily those that
11 were contained in the last IEP.  Taking into account that the District is seeking to implement an
12 IEP that calls for Student's full-time attendance at the middle school site,[3] and that Student's
13 attendance three days per week as of August 2013 gets closer to the District's goal, the Court
14 finds that three days per week satisfies the public policy concerns of stay put.[4]  Accordingly,
15 attendance at Bret Harte Middle School three days per week is Student's current educational
16 placement for the purposes of stay put.  Student's home instruction shall be changed to two days
17 per week.

18     2. <u>Location of Services</u>

19 Despite the District's contention to the contrary, R.R.'s September 15, 2011 Amendment
20 page provides that Parent "would like [R.R.] to attend on Tuesdays if Monday is a school holiday
21 (currently [R.R.] attends M/Th." (Def.'s Stmt, Ex. 4, Dkt. No. 40 at 13.) The September 27, 2011
22 IEP Amendment supports this arrangement by explicitly stating the days of service for Student's
23 1:1 aides (SCA) through Quality Behavior Outcomes ("QBO"), which was later changed to

---

[3] The OAH Decision provides that "Student's June 4, 2013 IEP offers Student placement in a SDC for five periods a day, five days a week, a total of 1,305 minutes." (Def.'s Mot. to Dismiss, Dkt. No. 11-1, Ex. A at 15.)

[4] The Court acknowledges the District's concern that, despite Parent's contentions to the contrary, Student was not regularly attending school full-time, three days per week. The Court, however, is confident that Parent will comply with this Court's finding that Student's current educational placement is three days per week at Bret Harte Middle School and will ensure his regular attendance.

Trumpet Behavior Health. These days of service are Mondays and Thursdays for 390 minutes (6.5 hours), Wednesdays for 300 minutes (5 hours), and Tuesdays and Fridays for 360 minutes (6 hours). *Id.* at 7. Accordingly, Student's shall attend the school site on Mondays, Thursdays, and Fridays. If Monday is a holiday, Student may attend school on the following Tuesday for 390 minutes.

Since Student will be in school on Mondays, Thursdays, and Fridays, home instruction will occur on Tuesdays and Wednesdays pursuant to the duration listed in the IEP. (*See* Def.'s Stmt, Ex. 4 at 7.) If Monday is a holiday, and Parent wishes to have Student attend school on a Tuesday, she is responsible for coordinating with the District, School, and/or aides to ensure that they are aware that Student will be receiving in-school instruction on that day in lieu of home instruction.

The parties are responsible for determining the precise timing of Student's services, which are not included in the IEP. The duration of his daily instruction, however, must be for the amount of time provided in the IEP, as set forth above.

3. <u>Body check</u>

Parent requests that she be able to perform daily "body checks" with skill trainers to record injuries and bruises Student may have sustained. This is not included in the IEP and, therefore, is not part of Student's current educational placement.

4. <u>Staff Meetings</u>

Parent also requests that monthly staff meetings be held with Student's aides. This is also not included in the IEP and, therefore, is not part of Student's current educational placement.

## IV.    CONCLUSION

As set forth above, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' motion for preliminary injunction to enforce "stay put," and finds that Student's current educational placement for the purposes of stay put, which must be delivered by the District during the pendency of this action, are as follows:

1. Skill trainers on the days of R.R.'s attendance at school, which are Mondays (390 minutes), Thursdays (390 minutes), and Fridays (360 minutes);

2. Two days per week of home instruction with skills trainers to occur on Tuesdays (360 minutes) and Wednesdays (300 minutes).
3. 20 minutes of individual occupational therapy once per week;
4. 30 minutes once per week of individual Speech and Language (pull-out) services at school;
5. 60 minutes once per month of Speech and Language consults in the community;
6. Health and Nursing Specialized Physical Care (seizure plan monitoring) 15 minutes once per month;
7. 45 minutes per month of Assistive Technology.
8. 360 minutes per year of Occupational Therapy class consults;
9. 4 hours per week of behavior consult (in class, the home, or community);
10. Extended School Year Services, which include: 4 hours of home instruction 3 days per week and then 4 hours five days per week, with 30 minutes Individual Speech and Language consult and 20 minutes Individual Occupational Therapy weekly;

Body checks and monthly staff meetings with aides are not part of Student's current educational placement for the purposes of stay put.

IT IS SO ORDERED.

Dated: February 25, 2014

KANDIS A. WESTMORE
United States Magistrate Judge