United States District Court
Northern District of California

R.R., by and with his parent, ROSLYN R.,

Plaintiffs,

v.

OAKLAND UNIFIED SCHOOL DISTRICT, and GARY YEE, individually and in his capacity as Superintendent of the Oakland Unified School District,

Defendants.

Case No.: CV 13-05069-KAW

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT OAKLAND UNIFIED SCHOOL DISTRICT'S MOTION TO DISMISS

(Dkt. No. 10)

On October 30, 2013, Plaintiffs R.R. ("Student") and Parent Roslyn R. ("Parent") filed a complaint against Defendant Oakland Unified School District ("District") and Superintendent Gary Yee for violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, and the California Education Code; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 20 U.S.C § 794; and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132. (Compl., Dkt. No. 1.)

On November 10, 2013, Defendants filed a motion to dismiss Plaintiffs' third through tenth causes of action against the District and dismiss all causes of action against Superintendent Yee. (Def.'s Motion to Dismiss, "Def.'s Mot.," Dkt. No. 10.)[1]

On January 16, 2014, the Court held a hearing, and after careful consideration of the parties' arguments, for the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART the District's motion to dismiss.

///

///

---

[1] In their Opposition to the motion to dismiss, Plaintiffs agreed to voluntarily dismiss all causes of action against Superintendent Yee. (Pls.' Opp'n, Dkt. No. 16 at 7.)  Accordingly, the Court will not address the causes of action as they pertain to Superintendent Yee.

# I. BACKGROUND

Plaintiff R.R. ("Student") is a 15 year old boy with severe autistic-like behaviors, low cognitive ability, is non-verbal, has a long-standing seizure disorder, and exhibits aggressive and self-injurious behavior. (Compl. ¶ 7.) He was found eligible for special education services in May 2001. *Id.*

In May and September 2011, an Individualized Education Plan ("IEP") was implemented, which included 23 hours of home-based instruction provided by a Non-Public Agency to provide Applied Behavior Analysis services and training to R.R. in the home environment. (Compl. ¶ 9.)

In June 2013, the IEP team convened, at which time the District proposed an IEP and changes in the program, placement, services, and goals, to which Parent did not consent. (Compl. ¶ 9.) Thereafter, the District filed a due process request before the Office of Administrative Hearings ("OAH") seeking the authority to implement the IEP without Parent's consent. (Compl. ¶10.) A hearing was held, and the Hearing Officer's decision authorized the District to implement the proposed IEP, as amended, over Parent's objections. (Compl. ¶ 14.)

On October 30, 2013, Plaintiffs filed a complaint in federal court against the District and Superintendent Yee contesting the OAH Decision and alleging additional violations of Section 504 and the ADA.

On November 10, 2013, Defendants filed a motion to dismiss the third through tenth causes of action.

# II. LEGAL STANDARD

## A. Individual Standing of Parent in Special Education Cases

Parents of children with disabilities have independent, enforceable rights under the IDEA. *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 526 (2007)("parents enjoy enforceable rights at the administrative stage, and it would be inconsistent with the statutory scheme to bar them from continuing to assert these rights in federal court.")  These rights are not limited to certain procedural and reimbursement-related matters, but rather "encompass the entitlement to a free appropriate public education for the parents' child." *Id.* at 533.

///

### B. Failure to Exhaust Administrative Remedies in Special Education Cases

When a defendant submits a motion to dismiss under Federal Rule of Civil Procedure 12(b), the plaintiff bears the burden of establishing the propriety of the court's jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

The IDEA requires the exhaustion of state administrative remedies before a party seeks judicial review. *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992). Exhaustion "allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Id.* at 1303; *see also Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 875-76 (9th Cir. 2011).

In special education cases, the failure to exhaust administrative remedies does not deprive the district court of subject matter jurisdiction. *Payne*, 653 F.3d at 867. Rather, "the IDEA's exhaustion requirement is a claims processing provision that IDEA defendants may offer as an affirmative defense." *Id.* The Ninth Circuit has adopted a relief-centered approach and interprets § 1415(l) to require exhaustion of IDEA remedies only when the civil action brought under the ADA and Section 504 seeks relief that is also available under the IDEA. *Id.* at 872; *see also* 20 U.S.C. § 1415(l).

### C. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, (1957)).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss based on rule

3

12(b)(6) challenges the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995).

In considering a 12(b)(6) motion, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted).

A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are not adequate. *Id.* at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts*." Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

### III. DISCUSSION

**A.    Parent's Individual Standing to Assert Special Education Claims**

Defendants seek to have Parent's individual claims dismissed for failure to allege facts to support any individual causes of action on behalf of Parent. (Defs.' Mot. at 19.) First, Defendants

4

argue that the complaint does not specify which claims are brought on behalf of Parent or Student. (Defs.' Mot. at 19.) Second, the only facts specifically alleged regarding Parent is that she was denied the opportunity to observe high school classes, which is not necessarily a right conferred by the IDEA. (Defs.' Mot. at 20.)

At the hearing, Plaintiffs clarified that the crux of Parent's claims concerned her right to participate in the IEP process and the FAPE determination. Therefore, Plaintiffs are granted leave to amend to clearly identify which claim or claims are being asserted by Parent, which are asserted by Student, and which are being brought by both.

### B. Failure to Exhaust Administrative Remedies

In the context of this motion, Defendants argue that Plaintiffs failed to exhaust their administrative remedies for the fourth through tenth causes of action. (Defs.' Mot. at 9-11.) Failure to exhaust does not divest the federal courts of subject matter jurisdiction, and decisions regarding whether a party exhausted administrative remedies are better decided through "a fact-specific assessment of the affirmative defense than through an inquiry about whether the court has the power to decide the case at all." *Payne*, 653 F.3d at 870. The complaint fails to allege that Plaintiffs exhausted their administrative remedies for any of the causes of action. As such, the complaint fails to state a plausible claim. This, however, may be cured by amendment. To the extent that the District's arguments regarding Plaintiffs' failure to exhaust administrative remedies should be determined by evidence beyond the pleadings, such an argument is more suitably addressed in a motion for summary judgment.

Accordingly, Plaintiffs are granted leave to amend the complaint to generally allege that they have exhausted their administrative remedies. If Plaintiffs allege claims that were not raised in the administrative proceedings, the Court trusts that Plaintiffs will not allege claims that they know will ultimately be barred.

### C. Failure to meet Pleading Standards

As an initial matter, the complaint does specify which causes of action are being alleged. Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). Here, the complaint does not even provide a formulaic

recitation of the elements of each cause of action, which would still be insufficient to withstand a motion to dismiss under Rule 12(b)(6). *See Twombly,* 550 U.S. at 555.  Further, all of Plaintiffs' causes of action "reallege and incorporate by reference" the preceding paragraphs without identifying which facts relate to which causes of action, leaving the Court to guess which facts pertain to which causes of action.  It is also unclear whether the causes of action are duplicative, as all causes of action relate to three statutes and the individual causes of action fail to specify the basis of each claim.  Each cause of action should have a heading stating the basis of the causes of action, who is asserting it, and against which defendant it is alleged.

Accordingly, as currently pled, the complaint is wholly insufficient and must be amended to comply with the *Iqbal-Twombly* pleading standard.

**D.   Failure to State a Claim under Federal Rule 12(b)(6)[2]**

Defendants seek to have Plaintiffs' third through tenth causes of action dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6). (Defs.' Mot. at 11.)

1. <u>Plaintiffs' IDEA Causes of Action</u>

Plaintiffs' third, fourth, sixth, and eighth causes of action allege violations of IDEA.

   a.   *Third Cause of Action for Stay-Put*

Plaintiffs' third cause of action alleges that the District failed to comply with the "stay put" provisions of the IDEA "after the Hearing Officer's decision was issued but before it became final." (Compl. ¶ 24.)  A student has an automatic right to "stay put" under the IDEA, which is to remain in his current educational placement, from the time a complaint is filed until his case is resolved. *A.D. ex rel. L.D. v. Hawaii Dep't of Educ.*, 727 F.3d 911, 912 (9th Cir. 2013) (*citing* 20 U.S.C. § 1415(j)).

At the hearing, Plaintiffs claimed to have made a stay put demand after the OAH Decision was issued, which would confer rights during the time period between the issuance of the

---

[2] Additionally, Defendants argue that the third, fourth, sixth, and eighth IDEA causes of action are either duplicative or their first and second causes of action and may be stricken under Rule 12(f). *See* Fed. R. Civ. P. 12(f) (A court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.").  The Court, however, declines to exercise its discretion in striking potentially duplicative causes of action, and so Rule 12(f) will not be addressed.

Decision and the filing of this action in federal court. There are no facts pled, however, that Plaintiffs made a stay put demand at any point prior to the instant proceedings.

Accordingly, Plaintiffs are granted leave to amend to the extent that they can allege facts that a stay put demand was made.

    b.  *Fourth Cause of Action*

The fourth cause of action alleges that the "District violated their rights and procedural protections by refusing to assess and instruct R.R. in American Sign Language or other sign language as requested by Parent, where signing is his primary mode of communication, and required by 20 U.S.C. Section 1414(a)(2) and 1414(b)(3)." (Compl. ¶ 25.)  This statute, however, concerns the procedure for evaluations and eligibility determinations for special education services, and requires that the student be assessed in his primary mode of communication. *See* 20 U.S.C. §§ 1414(a)(2), 1414(b)(3).  On the face of the complaint, it is unclear whether ASL is Student's primary mode of communication, though it appears from the moving papers that he does not speak ASL.  At the hearing, Plaintiffs' counsel clarified that Student does not speak ASL.  Accordingly, the fourth cause of action is dismissed without leave to amend, because the District is under no obligation to evaluate or instruct Student in a language that is not his primary form of communcation.

    c.  *Sixth Cause of Action*

The sixth cause of action alleges that the District violated Student's right to be educated in the least restrictive environment (LRE) by "refusing to allow Parent to review or consider placement, and refusing to place R.R., at a high-school level campus program with students of his own age, in violation of 20 U.S.C. Section 1412(a)(5)(A)." (Compl. ¶ 27.)  Generally, LRE does not refer to the type of school site placement, but rather the requirement that students with disabilities be educated with their non-disabled peers to the maximum extent possible. *See* 20 U.S.C. § 1412(a)(5)(A).  At the hearing, Plaintiffs advocated that the Court interpret LRE to mean that there is a preference that students with disabilities be educated with nondisabled peers of the same age. The statute provides, in pertinent part that:

> To the maximum extent appropriate, children with disabilities... are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(a)(5)(A). At the hearing, the District urged the Court to adopt an interpretation that limited LRE to "the provision of services at a school versus in the home, not in reference to the provision of services for a student at a middle versus high school campus." (Defs.' Reply at 6.) To the contrary, courts have used the terms "children" and "peers" interchangeably. *See, e.g., Dep't of Educ., State of Hawaii v. Katherine D. By & Through Kevin & Roberta D.*, 727 F.2d 809, 817 (9th Cir. 1983); *Sacramento City Unified Sch. Dist., Bd. of Educ. v. Rachel H. By & Through Holland*, 14 F.3d 1398, 1403 (9th Cir. 1994). Regulations promulgated by the U.S. Department of Education also suggest that age is a factor. 34 C.F.R. § 300.116(e) ("A child with a disability is not removed from education in age-appropriate regular classrooms solely because of needed modifications in the general education curriculum.")

Assuming that education with similarly-aged peers is part of the LRE evaluation, Plaintiffs still fail to sufficiently state facts that support a cause of action. Plaintiffs seem to misunderstand that there is no absolute right to be mainstreamed, but rather students are to be educated in a regular classroom to the "maximum extent possible." *See* 20 U.S.C. § 1412(a)(5)(A). The complaint fails to allege any facts which, if true, would establish a violation of LRE requirements, as the allegation that the school refused to place student at a high school campus alone is insufficient. In short, Plaintiffs allege no facts to show that Bret Harte Middle School is not the least restrictive environment to the maximum extent possible.

In addition, Plaintiffs allege that Student's right to LRE was violated by the District's refusal to allow Parent to observe classes on a high school campus. (*See* Pls.' Opp'n at 16.) First, as Plaintiffs state in their opposition, this allegation implicates the potential denial of FAPE, which is the second cause of action, rather than a violation of LRE, because it concerns parental participation in the formulation of the IEP. (*See* Pls.' Opp'n at 16:8-15.) Thus, it makes more sense to include such an allegation in the second cause of action. Second, California Education

8

Code section 56329(c) provides that "'[i]f a public education agency observed the pupil in conducting its assessment ... *an equivalent opportunity* shall apply to an independent educational assessment' for the parents with regards to observation of the proposed educational placement and setting." *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 909 (9th Cir. 2009)(emphasis in original).  Additionally, if a parent proposes a publicly financed, nonpublic school placement, the district "shall have an opportunity to observe the proposed placement and the pupil in the proposed placement, if the pupil has already been unilaterally placed in the nonpublic school by the parent or guardian." Cal. Educ. Code § 56329(d).  There does not appear to be an equivalent right of the parent to observe classes in which the pupil is not enrolled to determine whether it could be an appropriate classroom placement for LRE purposes.

Accordingly, the sixth cause of action is dismissed with leave to amend to allege, if possible, sufficient facts to show that Student's right to be educated in a regular classroom to the maximum extent possible has been violated.  Or alternatively, Plaintiffs may amend the first and second causes of action to include LRE allegations, since the sixth cause of action appears to challenge the hearing officer's decision, which is the first cause of action.  So, while the Court agrees with the District that this cause of action is redundant to the extent that its allegations should be included in the first and second causes of action, Plaintiffs are permitted to plead their claims as they see fit, so long as they do not run afoul of the Federal Rules of Civil Procedure.

### d. Eighth Cause of Action

The eighth cause of action alleges that the District violated "Plaintiff's right to the provision of post-secondary goals and age-appropriate transition services in the year he will turn 16, as required by 20 U.S.C. Section [1414(d)(1)(A)(i)(VIII)]." (Compl. ¶¶ 18, 29.)  Contrary to Plaintiffs' contention, that section does not concern transition to a "full-time attendance in [a] [Special Day Class] coupled with placement on a high-school campus." (Pls.' Opp'n at 11.) Transition services, instead, refer to providing a plan to successfully transition to post-secondary "training, education, employment, and, where appropriate, independent living skills." 20 U.S.C. § 1414(d)(1)(A)(i)(VIII)(aa).  The Court notes that Student does not turn 16 until the end of May 2014. (*See* Compl. ¶ 7.)  Given that Student is only 15 years of age, the District argues that it can

still convene another IEP meeting before the end of the school year to include transition planning and is not in violation of IDEA "unless and until Student turns 16 without a valid IEP in this regard." (Defs.' Mot. at 14.)

Nevertheless, the complaint does not clearly identify the specific facts in support of this cause of action.[3] Further, it appears that the absence of an individualized transition plan was not addressed in the OAH proceedings, so Plaintiffs do not appear to have exhausted their administrative remedies. Accordingly, the eighth cause of action is dismissed with leave to amend.

2.  Section 504 Causes of Action

The fifth, seventh, and ninth causes of action allege violations of Section 504 of the Rehabilitation Act. *See* 29 U.S.C. § 794.

a.  *Fifth and Seventh Causes of Action*

The fifth and seventh causes of action are vague and do not specify the particular injury or remedies sought, as they simply reallege and incorporate by reference the preceding paragraphs. (Compl. ¶¶ 26, 28.) As an initial matter, these claims do not meet the *Iqbal-Twombly* pleading standard, as discussed above. *See supra* Part III.C.

In their opposition, Plaintiffs clarify that the fifth cause of action "asserts that the District's same refusal to assess and instruct R.R. in ASL...." (Pls.' Opp'n at 9.) While it is unclear, this cause of action mirrors the fourth cause of action, and is dismissed without leave to amend, as Student does not communicate by using ASL.

Similarly, in their opposition, Plaintiffs assert that their seventh cause of action alleges that "[b]y not being placed on a high school campus at the age of 15, he was denied equal access to and the benefits accorded to typically-developing peers of his own age." (Pls.' Opp'n at 10.) These allegations, however, are not apparent from the face of the complaint, so Plaintiffs are granted leave to amend.

---

[3] The Court encourages the parties to meet and confer regarding convening another IEP meeting before Student turns 16 to address transition planning.

Accordingly, the fifth cause of action is dismissed without leave to amend, and the seventh cause of action is dismissed with leave to amend to specify the factual basis for the cause of action.

### b. Ninth Cause of Action

The ninth cause of action alleges that the District "violated [Plaintiffs'] procedural and substantive rights to be free from discrimination on the basis of the Student's disabilities and denied Student's participation in and the benefits of statutorily mandated transition services..." under Section 504. (Compl. ¶ 30.) While transition planning is a remedy available under IDEA, it is not apparent that Student is entitled to a transition plan under Section 504. *See* 20 U.S.C. 1414(d)(1)(A)(i)(VIII). At the hearing, Plaintiffs, for the first time, suggested that Student is entitled to a 504 plan. The District responded that 504 plans are generally subsumed by IEPs. In fact, one of the ways to satisfy Section 504 requirements for FAPE is to implement an IEP, thereby relieving the District of an obligation to develop a separate 504 plan. *Frequently Asked Questions about Section 504 and the Education of Children with Disabilities*, U.S. DEP'T OF EDUC., available at http://www.ed.gov/about/offices/list/ocr/504faq.html (last visited Jan. 22, 2014).

Nevertheless, unlike the IDEA, Section 504—and the promulgated rules that apply to K-12 education—do not specifically address post-secondary transition planning. *See* 29 U.S.C. § 794; 34 C.F.R. § 104.31-.39. Section 504 only requires that a school "that provides personal, academic, or vocational counseling, guidance, or placement services to its students shall provide these services without discrimination on the basis of handicap." 34 C.F.R. § 104.37. There is no requirement that an individualized transition plan (ITP) be developed. Perry A. Zirkel, *An Updated Comparison of the IDEA and Section 504/ADA*, 216 ED. LAW REP. 1, 2007 WL 1238603 (Mar. 22, 2007). This is consistent with Section 504, which broadly focuses on equal access rather than an affirmative obligation to provide additional services that are unavailable to nondisabled students. Since nondisabled students are not provided with post-secondary transition planning akin to those services that are statutorily mandated by IDEA, Student has no such entitlement under Section 504.

11

1 Accordingly, since Student does not have an independent right to post-secondary
2 transition planning under Section 504, the ninth cause of action is dismissed without leave to
3 amend.

### 3. ADA Cause of Action

The tenth cause of action alleges that Student was "excluded from or denied the benefit of services and programs by reason of Student's disabilities" in violation of Title II of the Americans with Disabilities Act. (Compl. ¶ 31.) Like the fifth and seventh causes of action, the complaint does not specify the scope of the injury to Student nor the remedies sought. In their opposition, Plaintiffs appear to argue that the District's refusal to assess and instruct Student in ASL precludes his participation in public education. (Pls.' Opp'n at 18.) Plaintiffs rely on *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.,* 725 F.3d 1088 (9th Cir. 2013). This reliance is misplaced. *K.M.* involved deaf and hard of hearing students who requested real-time transcription services so that they could participate in class. *Id.* at 1092. Defendants argue that, unlike the plaintiffs in *K.M.*, Student does not speak ASL, and so has no right conferred by the ADA to be "taught ASL in a hope that that would allow Student a better ability to communicate." (Defs.' Reply at 10.)

At the hearing, Plaintiffs conceded that Student does not speak ASL and Plaintiffs were unable to provide any authority that conferred an affirmative obligation under Title II to teach a language that the Student does not already use to communicate. Accordingly, this cause of action is dismissed without leave to amend.

## IV. CONCLUSION

For the reasons set forth, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss.

All causes of action against Superintendent Gary Yee, in both his individual and official capacities, are dismissed with prejudice.

As to the claims against the District, the third, sixth, seventh, and eighth causes of action are dismissed with leave to amend. The fourth, fifth, ninth and tenth causes of action are dismissed without leave to amend, because any amendment would be futile. Additionally,

1 Plaintiffs are encouraged to amend the entire complaint, including the first and second causes of
2 action, consistent with this order.
3     Plaintiffs shall file a first amended complaint within twenty-one (21) days from the date of
4 this order, which must clearly specify which causes of action are being asserted, which plaintiffs
5 are asserting each cause of action, and the facts supporting each cause of action.
6     In addition, Plaintiffs are encouraged to attach to the amended complaint any documents
7 that they seek to incorporate by reference, such as the OAH Decision.  The amended complaint
8 will supersede the original complaint, and must therefore be complete in itself without reference
9 to the prior or superseded pleading, as "[a]ll causes of action alleged in an original complaint
10 which are not alleged in an amended complaint are waived." *King v. Atiyeh*, 814 F.2d 565, 567
11 (9th Cir. 1987) (citations omitted).
12     IT IS SO ORDERED.
13 Dated: February 28, 2014

_____
KANDIS A. WESTMORE
United States Magistrate Judge

13